## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ANGELA MONTOYA, MICHAEL
MONTOYA, and MICHAEL ANGELO
MONTOYA,**

        Plaintiffs,

vs.                                       **Civ. No. 08-622 ACT/LFG**

**ARCHIE ROMERO, III, individually, and in
his capacity as a police officer of the Town of Clayton,
NM Police Department; ANDREW SCOTT, individually
and in his capacity as a police officer of the Town of Clayton,
NM Police Department; COLLEEN JOHNSTON, individually
and in her capacity as a police officer of the Town of
Clayton, NM Police Department; JOHN HERRERA, individually
and in his capacity as a police officer of the Town of Clayton, NM
Police Department; SCOTT JULIAN, individually and in his
capacity as a police officer of the Town of Clayton, NM Police
Department; TOWN OF CLAYTON, NEW MEXICO, Clayton
Police Department, a municipality incorporated under the laws
of the state and federal judicial district of New Mexico, on behalf of its Police
Department,**

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

     **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment

and Memorandum in Support Thereof filed September 14, 2009 [Doc. 49].[1]  Plaintiffs filed a

---

[1]Plaintiffs dismissed Defendant Andrew Scott as a defendant on June 24, 2009 [Doc. 39].  Thus, Count XI alleging malicious abuse of process against Andrew Scott has already been dismissed and will not be addressed in this Memorandum Opinion and Order.

response on October 8, 2009 [Doc. 52] and Defendants filed a reply on October 20, 2009 [Doc. 54]. The Court has reviewed the pleadings and the relevant law and finds that Defendants' Motion is well taken and will be granted.

**Undisputed material facts.** [2]

    1.    *April 1, 2006, incident.*

On April 1, 2006, Defendant Archie Romero III ("Romero") responded to a report of a domestic dispute at the residence of Plaintiffs Angela Montoya ("Angela"), Michael Montoya ("Michael") and Michael Angelo Montoya ("Angelo").

Michael was not at the residence when Romero arrived. Romero knocked on the door and walked into the residence when Angelo opened the door. Romero told Angela and Angelo to stay in the living room of the residence while he investigated the report of a domestic dispute. Romero briefly walked through the residence after Angela told him nothing was going on at the residence. Angela blocked Romero's path so he could not walk through other parts of the residence. Angela objected to the search. Romero unlatched the garage outside the residence and flashed a flashlight into the garage without entering the garage.

Romero did not threaten Angela nor touch or arrest her while he was at the residence. Romero did not speak inappropriately to Angelo nor touch or arrest Angelo while he was at the residence. Michael did not talk to Romero while he was at the residence.

---

[2]Plaintiffs in their Response attached exhibits which purport to be police incident reports. Contrary to Fed.R.Civ.P. 56(e), these reports have not been authenticated and thus the Court cannot consider them. *Clark v. Thomas*, 505 F.Supp. 2d 884, 887, n.1 (D. Kan. 2007) ("Unsworn statements [unsworn police reports] do not constitute proper evidence for consideration upon summary judgment."); *Levin v. Airgas Southwest, Inc.*, 2006 WL 1305040, *14 (D.N.M. 2006) ("For documents to be admissible for consideration on summary judgment, the offering party must properly authenticate the document and attach it to an affidavit that meets the requirements of Rule 56(e).")(citation omitted).

Angela does not remember if she was charged with a crime resulting from the domestic disturbance call and response on April 1, 2006.   Neither Angelo nor Michael was charged with a crime as a result of the domestic disturbance call and response on April 1, 2006.

2.   *April 8, 2006, incident.*

On April 8, 2006, Romero was dispatched to the VFW in response to a report that a fight had occurred inside the VFW.  Angela worked at the VFW.  An argument had taken place between two patrons in the VFW.  Angela asked Romero "what do you want" when he arrived and advised Romero that there was no fight going on at the VFW.  Angela did not know whether or not there had been a fight inside the VFW when she responded to Romero's question.  Angela was charged by Romero with interference with a police officer as a result of this incident.  Angela was acquitted of these charges.

3.   *July 21, 2006, incident.*

On July 21, 2006, Angelo arrived at his residence and found a party in progress.  Six to eight underage children were drinking at his residence.  Angelo himself had drank approximately seven beers in the three to four hours before arriving home.  Angelo was under the age of twenty-one (21).

Romero arrived at the residence five minutes after Angelo in response to a report of a disturbance.  Most of the people ran away when Romero arrived.  Angelo said they ran away because they were underage and did not want to get into trouble.

Angelo told Romero there was no fighting going on and then said he was going to get his father.  Romero advised Angelo he was being arrested for interfering with an officer.  Romero grabbed Angelo's wrists, placed him against the wall of the garage and handcuffed him.

Romero advised Angela that he arrived at the residence in response to a report of a disturbance.  He also advised Angela that Angelo had not permitted him entry into the backyard of

3

the residence and gotten in Romero's face.  Angela cussed and yelled at Romero after he placed Angelo in the police car.  Romero advised Angela that she would need to get out of the way or be charged with interfering with an officer.

Angela advised Angelo he should not blow into a Breathalyzer.   At the police station Defendant John Herrera ("Herrera) advised Angelo that Angela had said that he should blow into the Breathalyzer in order to avoid staying in jail overnight.  Angelo took the Breathalyzer test.

Angelo was charged with interfering with an officer, disturbance, harassment, minor in possession and giving alcohol to a minor.

      4.    *October 1, 2006, incident.*

On October 1, 2006, a patron of the VFW died as a result of a head injury after drinking at the VFW.  Romero investigated the incident. Angela does not know whether or not one of the witnesses told Romero that Angela had advised the witnesses not to write statements because Angela wanted to see what was written and keep a copy for her records.  As a result of this investigation, Romero charged Angela with interference with an officer for advising VFW employees to not cooperate with the police.

      5.    *October 11, 2006, incident.*

On October 11, 2006, Defendant Colleen Johnston ("Johnston") investigated an incident in which another man fell down at a gas station after leaving the VFW where he had been drinking. On October 12, 2006, Johnston charged Angela with selling alcohol to an intoxicated person. Angela was found not guilty at trial.

6.     *Facts concerning Julian.*

The only factual information provided regarding Defendant Scott Julian ("Julian") comes from Angela.  Angela does not have any knowledge regarding the training Julian provided to his officers nor does she have any knowledge regarding the supervision Julian gave to his officers.

7.     *Facts concerning the Town of Clayton.*

The only factual information presented regarding the Town of Clayton also comes from Angela.  Angela does not have any knowledge regarding the search and seizure  policies or customs of the Town of Clayton.  She does not have any knowledge regarding policies or customs of the Town of Clayton with regard to supervision of police officers.

**Standard for deciding motions for summary judgment.**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex v. Catrett*, 477 U.S. 317 (1986).  The opposing party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  *Id.* at 248. Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988).

**Qualified immunity**.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In *Pearson v. Callahan*, the Supreme Court held that, "while the

sequence set forth [in *Saucier v. Katz*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. ----, 129 S. Ct. 808, 818 (2009). Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity should be addressed first in light of the circumstances of the particular case at hand." *Id.*

Once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish a violation of a constitutional or statutory right by the defendant and that the right alleged to have been violated was clearly established at the time of the defendant's allegedly unlawful conduct. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2002), *cert. denied,* 534 U.S. 1019 (2001); *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000), *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995). If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity. *Albright*, 51 F.3d at 1535. "In short, although we will review the evidence in the light most favorable to the nonmoving party...the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001), *cert. denied* 535 U.S. 1056 (2002), (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). "[T]he affirmative defense of qualified immunity...protects all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (internal quotation marks omitted).

In this matter the Court will follow the analysis of *Saucier v. Katz. Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test is whether, taking Plaintiffs' allegations as true, Defendants violated their constitutional rights. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). The

second part is whether Defendants violated clearly established law at the time of the alleged unlawful conduct.  *Id.* at 1205.

  *Clearly established law*.

  Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 880 (1984).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Strepka v. Miller*, 28 Fed. Appx. 823 (10th Cir. 2001) (citing *Currier v. Doran*, 242 F.3d at 923); *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d at 1186 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The law must be clearly established so that a reasonable officer would know that what he was doing was unconstitutional.

  In the Tenth Circuit, to carry the burden of identifying a clearly established right, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."  *Trotter v. Regents of the University of New Mexico*, 219 F.3d 1179, 1184 (10th Cir. 2000) (quoting *Hannula v. City of*

*Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds by *Dixon v. Richer*, 922 F.2d 1456, 1461 (10th Cir. 1991)). This "must be undertaken in light of the case's specific context, not as a broad proposition." *Saucier v. Katz*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* at 202. If a reasonable officer could have believed that the actions were lawful, "defendants are entitled to dismissal before discovery." *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992).

Thus, in deciding a summary judgment and qualified immunity motion, a court must consider what each Defendant is alleged to have done, albeit in the light most favorable to the plaintiff, against a backdrop of the applicable law.

**Discussion.**

Before the Court addresses each incident individually, it will point out the deficiencies in the briefing on this Motion. The parties did not present evidence in a form that would have been helpful to the Court in order to rule on the Motion. As the Tenth Circuit has stated,

> [S]ufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Id.* at 1024 (citations omitted). Without a specific reference, "we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Id.* at 1025; accord, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

*Gross v. Burgraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). Nevertheless, to ensure justice, the Court has scoured the record in this case for relevant evidence.

The Court would also point out that Plaintiffs failed to specifically controvert Defendants' undisputed facts as required by Fed.R.Civ.P. 56(e)(2) and D.N.M.LR-Civ.56(b). Plaintiffs included additional facts and referred to multiple facts submitted by the Defendants. As an example, as to

the April 8, 2006 incident, Plaintiffs submitted that Angela had been acquitted of all charges and then referred to five of Defendants' facts. This statement did not controvert Defendants' facts. *Id.* Further Plaintiffs relied on unsworn documents in an attempt to demonstrate there was a material issue of fact in dispute. The Court cannot consider unsworn police reports. *Clark v. Thomas*, 505 F.Supp. 2d at 887, n.1.

Plaintiffs bear the burden of demonstrating that the Defendants violated their constitutional rights and that the alleged constitutional right violated was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan*, 129 S. Ct. at 818. Plaintiffs failed to carry their burden as to each and every claim against the Defendants. As an example, as to the April 1, 2006, incident, Plaintiffs assert that the unsworn police report "shows that the Plaintiffs' fourth amendment rights protecting against unreasonable search and seizure were violated." Response, Doc. 52 at 10. Even if the Court could consider this report, Plaintiffs have not stated specifically the conduct that violated Plaintiffs constitutional rights. The only case cited by Plaintiffs to demonstrate that the law was clearly established, *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), involves the consensual search of a car. This case does not demonstrate that the "contours of [a] right [were] sufficiently clear." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d at 1186. As discussed below, the three remaining cases cited by Plaintiffs do not support Plaintiffs' claims. The cases, *U.S. v. Lefkowitz*, 285 U.S. 452 (1932), *Taglavore v. U.S.*, 291 F.2d 262 (9th Cir. 1961), and *City of Canton v. Harris*, 489 U.S. 378 (1989), do not support any constitutional violation by the Defendants nor do they demonstrate that the actions of any Defendant violated clearly established law.

       *1.     April 1, 2006, incident.*

In their Complaint, Plaintiffs allege the following causes of action against Romero as a result of the April 1, 2006, incident: Count 1, unreasonable search; Count II, unreasonable seizure; Count III, unreasonable seizure; and Count IV, excessive force.  Angela alleges in Count V, a claim for malicious abuse of process.

       a.     *Unreasonable search.*

It is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980) (some internal quotation marks omitted)).  Nevertheless, a warrantless search of a house can be constitutional when there are exigent circumstances.  For exigent circumstances to justify a warrantless search of a home: "(1) the officers [must have] had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry [must have been] reasonable*." United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008); *United States v. Smith*, 797 F.2d 836, 840 (10th Cir. 1986). The evaluation of whether a reasonable belief existed must be based on the "realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers."  *United States v. Najar*, 451 F.3d 710, 718-19 (10th Cir. 2006), *cert. denied* 549 U.S. 1013.  Reasonable belief does not require absolute certainty; the Supreme Court has explained that the standard is more lenient than the more stringent probable cause standards.  *Id.* at 718 (as explained by the Supreme Court in *Brigham City v. Stuart*, 547 U.S. 398 this does not require the government to show the officers had probable cause to believe a person inside the residence required immediate aid).  As to the scope of the search, the Tenth Circuit has implied that a search is reasonable in manner and scope if the officers "d[o] not attempt to search any place

beyond the locations where a victim might likely be found" and "confine[] the search to only those places inside the home where an emergency would reasonably be associated." *United States v. Najar*, 451 F.3d at 720.[3]

On April 1, 2006, a call was made to the Clayton Police Department that there was a domestic disturbance at the residence of Michael, Angela and Angelo.  The call was from a cell phone number with a 806 area code.  Romero responded to the call.  Angelo opened the door and Romero walked into the residence.  Angela was in the living room. Michael was not at the residence at this time.  Angela told Romero he was not going to search the residence without a search warrant. Angela testified to the following:

> Q.     You stood in front of him?  Is that what you said?
> A.     To the side of him to where he couldn't walk to the other rooms.
> Q.     You blocked his path?
> A.     Yes, and like he didn't believe me when I told him there was nothing going on.

Motion, Doc. 49 at Exh. A at 98-99.

Romero briefly walked through the residence.  At some point, Michael returned home and found Romero inside the residence.  He said that Romero unlatched the garage door and looked inside his garage with a flashlight.  Then Romero and the other officers left the residence.  There were no signs of an on-going domestic disturbance.

The Court concludes that in light of the foregoing legal authorities and undisputed facts, Romero's search of the residence was both reasonable and lawful. The Court finds that Romero had an objectively reasonable basis to believe there was an immediate need to protect the safety of the occupants of the residence and that the conduct of the entry and search was reasonable.  Someone

---

[3]Though this is a criminal case, it is instructive regarding the scope of the Fourth Amendment in the context of the police response to domestic disturbance calls.

called and told the Clayton Police Department that there was a domestic disturbance at the residence. Though the police knew the name of the caller, John Archuleta, there is nothing in the record indicating that they knew more than his name.  When Romero entered the residence only two of the three family members were present.  Angela told Romero he could not search her home without a warrant.  In addition, she tried to block him from searching her home.  The call reporting a domestic disturbance and the fact that Angela was not cooperative gave Romero reasonable grounds to believe there was a domestic disturbance and someone may be in need of immediate aid.  In addition, the facts demonstrate that the search was rather cursory.  Michael testified to the following:

> Q.    Did he look inside the room of your home?  Did he go into the various rooms in your home?
> A.    Yea, because he made a walk through the house.  He made a walk through the house and then he came back.  I don't know if he was looking in the rooms at the time he was walking through there.

Motion, Doc. 49, at Exh. C at 33-34.  Michael further testified he did not have a conversation with Romero.

   As a result of the call Romero was required to make an on the spot decision whether someone might be in immediate need of aid.  Prior to his entry and search, there is no objective evidence that would require him to reach the conclusion that there was little or no risk of danger to an occupant of the residence.  In their Response, Plaintiffs cite to one case in support of their claim that the scope of the search was unreasonable, *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  The facts of that case involve a consensual search of a car and the court held that the officer's search of containers in the car did not violate the defendant's Fourth Amendment right.  The case relied upon by Plaintiffs does not establish that Romero's search violated a constitutional right that was clearly established at the time of the incident.  Plaintiffs also suggest in their Response that Romero should

have ended his search once "all persons were accounted for." Response, Doc. 52 at 10. Plaintiffs do not cite to any authority that this violated clearly established law. It is undisputed that Michael was not present at the residence when Romero arrived and although he may have been present during at least part of the search, it was not unreasonable for Romero to search the home in the manner he did even if Michael was present.

Michael testified that Romero also searched the garage. [4] The issue is whether the garage is curtilage of the residence and thus there is a legitimate expectation of privacy regarding the garage. *United States v. Dunn*, 480 U.S. 294, 301 (1987). Plaintiffs bear the burden of proof that the garage is curtilage. *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir.2003) ("[T]he burden of establishing a legitimate expectation of privacy is on the party claiming a Fourth Amendment violation, and we have applied that same rule to a claimed invasion of the curtilage."). Plaintiffs must show that the area is "so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection." *Dunn*, 480 U.S. at 301. If the garage is not shown as curtilage, the Fourth Amendment protection does not apply.

To determine whether the garage is part of the curtilage, the court looks at four factors: (1) the proximity of the area claimed to be curtilage of the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by passers-by. *Id.* The only evidence before the Court regarding these factors is that Romero unlatched, not unlocked, the garage. The record does not contain evidence of the distance from the residence to the garage;

---

[4] Plaintiffs assert that Romero searched their backyard and cite to the unsworn police incident reports. In the Court's search for facts, there is testimony from Michael that Romero searched the backyard. There is no other information provided regarding the backyard or the nature of the search. The Court's analysis of whether the garage is curtilage applies to the backyard and for the same reasons Plaintiffs cannot prevail.

13

whether the garage lies within a fence; what was in the garage; whether there were signs excluding strangers from access; or whether the garage protected the area from observation by passersby. *United States v. Gerard*, 362 F.3d 484 (8th Cir. 2004). The fact that the garage door was latched is not determinative that the garage is curtilage. *Id*. at 488. Plaintiffs have not demonstrated that the search of the garage was unconstitutional or that it violated clearly established law.

Plaintiffs have not borne their burden as to Count I, unreasonable search. The Court will grant summary judgment as to Count I.

b.      *Remaining claims.*

In their Response, Plaintiffs do not address the remaining claims against Romero as a result of the April 1, 2006, incident and the facts do not support any claim of unreasonable seizure, excessive use of force, and malicious abuse of process. Romero did not threaten Angela nor touch or arrest her while he was at the residence. Romero did not speak inappropriately to Angelo nor touch or arrest Angelo while he was at the residence. Michael did not talk to Romero while he was at the residence. Angela does not remember if she was charged with anything resulting from this incident. Neither Angelo nor Michael were charged with anything as a result of this incident. The Court will grant summary judgment as to Counts II, III, IV and V.

2.      *April 8, 2006, incident.*

The allegations in Count VI only involve Angela. The claim is for malicious abuse of process against Romero as a result of the April 8, 2006, incident. Angela's testimony concerning this incident is as follows:

Q.      He then knocked on the front door several times and hears someone yell, "what the fuck do you want." Do you know –

....

Q.      You didn't say that to Officer Romero?

14

A. No.

Q. "The front door then opened and Bartender Angela Montoya stood in the way of Officer Scott and myself from entering and said," What do you want?" Is that true?

A. I wasn't standing in their way.  I just asked, "What do you want?"

Q. "I then stated that we received two calls that a fight was going inside the Bar and asked who was fighting."  Do you agree with that?

A. Yes.

Q. "Angela Montoya stated that no fight was going on and stated 'we didn't call so you have no need to be here.'"  Do you agree with that?

A. I said that there was no fight going on.  I didn't tell them that they weren't needed there.

....

Q. "Angela Montoya then walked from around the bar and said 'what'.  I then stated, 'I thought you said you didn't know what had happened."  Is that all true?

A. He asked me, but I told him I didn't know what happened.

Q. "Miss Aleshia Raines states that you had broke up the fight and threw them out of the Bar."  Did he communicate that to you?

A.  No.

Q. Then he said that he detected an odor of liquor on your breath and noticed you popping breath mints into your mouth.

A. No.

Q. Had you been drinking that day?

A. No.  You can't drink behind the bar.

Q. "Mrs. Montoya then states, 'We didn't call you.'" Is that true?

A. Yes.

....

Q. He states, about a sentence later, "I then asked Angela Montoya for her date of birth in which she states 'for what'?  I advised for the Police report in which she replied, "why I did not call you guys I'm not ....

Response, Doc. 49, Exh. A. at 129-132.

Q. The second paragraph indicates that Heather Aguello told Officer Romero that "Angela Montoya said for us not to write statements because she wants to see what we write and they want a copy for our records."  Did you ever direct Ms. Arguello not to write statements until you have reviewed them?

A. No.

Q. Do you know whether she told that to Officer Romero or not?

A. I don't know if she did or not.

*Id.* at 142.

The Tenth Circuit has not recognized a §1983 abuse of process claim.  *Bowling v. United*

*States*, 2009 WL 723226 (D. Kan. 2009).  Plaintiff s cannot demonstrate that their claims

of malicious abuse of process is a constitutional claim or that there is any clearly established law

that the Defendants violated.  Thus Plaintiffs cannot prevail on their claims of malicious abuse of

process.  However, the Court notes that the New Mexico Supreme Court combined the common

law torts of abuse of process and malicious prosecution into a single cause of action called

malicious abuse of process.  *Nanodetex Corp. v. Defiant Technologies*, 2009 WL 3303709 (10th

Cir. 2009).  The Court is also aware that the Tenth Circuit has recognized courts are to look to

common law-as opposed to the law of the forum state in which the action occurred-to determine

whether there is a constitutional  violation giving rise to liability under §1983.  *Pierce*, 359 F.3d

at 1286-88.  Thus, in an effort to be thorough, the Court will analyze Plaintiffs' claims as a

claim for malicious prosecution as the Tenth Circuit has recognized a §1983 claim of malicious

prosecution.  *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996).[5]  A §1983 malicious

prosecution claim requires proof of the following elements:

> "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the
> original action terminated in favor of the plaintiff; (3) no probable cause supported the
> original arrest, continued confinement, or prosecution; (4) the defendant acted with
> malice; and (5) the plaintiff sustained damages."

*Miller v. Spiers*, 2009 WL 2219256, *4 (10th Cir. 2009).

---

[5]Based on Plaintiffs' Complaint and Response to the Motion, the Court finds that Plaintiffs are asserting
their claims of malicious abuse of process pursuant to Section 1983 and not a state law claim.  Plaintiffs' Complaint
states that they are filing a 42 U.S.C. Section 1983 Complaint and that jurisdiction is pursuant to 42 U.S.C. Sections
1983 and 1988 and 28 U.S.C. Section 1343. In their Response, Plaintiffs argue that Romero is not protected by
qualified immunity as to the charges he filed against the Plaintiffs.  Response, Doc. 52 at 11. The Court also notes
that in the proposed Pre-trial report submitted to the Court Plaintiffs assert only constitutional claims. If the Plaintiffs
were asserting state law claims, the Court would decline to exercise pendent state law jurisdiction of the state law
tort claim of malicious abuse of process.

The undisputed facts are that as a result of the April 8, 2006, incident, Angela was charged with interference with a police officer.  She was acquitted of these charges.[6]  There is no evidence that there was an arrest.

Angela does not identify any "clearly established constitutional right" that Defendants violated.  *Albright v. Rodriquez*, 51 F.3d at 1534.  Angela alleges that Romero's actions were "harmful and offensive."  Doc. 1 at ¶89.  In Plaintiffs' Response, Plaintiffs assert: "This statement is factually correct-there was no fight going on and she did not call the police.  There is no crime found in her statement....the actions of the officer appear to be either highly malicious or clownish."  Response, Doc. 52 at 11.  Plaintiffs have failed to carry their burden.  *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) ("In order to carry [this] burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant violated it.  Rather, the plaintiff must articulate the clearly established constitutional right and defendant's conduct which violated the right with specificity....").

The law is clearly established to the contrary of Angela's claims.  "Violation of the Fourth Amendment requires an intentional acquisition of physical control."  *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)).[7]  "The Tenth Circuit has declined to expand the amendment to reach malicious prosecution claims in which the

---

[6]The Court is aware that other charges may have been filed against Angela as indicated in the unsworn police incident reports.  As previously discussed, the Court cannot consider these reports.  However, even if additional charges were considered, that would not change the Court's decision as to Count VI.

[7]The Court is aware that in *Becker* the criminal proceedings were dismissed before trial.  *Becker*, 494 F.3d at 914.  The Court notes however, that a court in the Tenth Circuit declined to expend Fourth Amendment liability when plaintiffs defended the charges against them in a trial noting that to do so would "impose fourth Amendment liability in cases that lacked a traditional seizure, 'every charging decision would support a Section 1983 malicious prosecution-type claim no matter the context.'"  *Jensen v. Utah*, 2008 WL 4372933, *28 (D. Utah 2008)(citing *Becker*, 494 F.3d at 130.))

plaintiff was never arrested or incarcerated." *Robinson v. Robinson*, 2008 WL 205300, *1 (D. Colo. 2008) (citing *Becker*, 494 F.3d at 915).  Tenth Circuit law holds that "the unavoidable construction of *Albright v. Oliver* is that no §1983 claim will arise from filing charges without probable cause under the substantive due process protections of the Fourteenth Amendment....[W]e find *Albright's* reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component." *Becker*, 494 F.3d at 918-19.  With respect to any procedural due process claim, pursuant to *Becker*, New Mexico state law provides an adequate post-deprivation remedy in the form on a state law claim of malicious abuse of process.  *Becker*, 494 F.3d at 920-21; *Durham v. Guest,* 145 N.M. 694, 204 P.3d 19 (2009).  Finally, with respect to substantive due process, Angela has have not shown that the charge is an exceptional, outrageous, conscience-shocking "affront [] to personal autonomy" which is required for such claims.  *Becker*, 494 F.3d at 922-23. [8]  Plaintiffs do not cite to any law and this Court has not been able to find any law that would support any constitutional claim for abuse of process in 2006 based on the facts of this case. Romero was not on "fair notice that the described conduct was unconstitutional" and thus he is entitled to qualified immunity. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).  The Court will grant summary judgment as to Count VI.

      3.    *July 21, 2006, incident*.

Count VII, Count VIII and Count IX involve only Angelo and Romero and allege unlawful detention (Count VII), and excessive force (Count VIII and Count IX).  Count IX involves Angelo

---

[8]In a recent Kansas district court decision the Court wrote that "[t]he Court has been unable to find any Tenth Circuit case dealing specifically with a §1983 abuse of process claim, but any claim would probably lie within the confines of the Fourteenth Amendment's Due Process Clause."  The Court found that the law was clearly established that "instituting a prosecution for some purpose other than for a criminal conviction would violate a persons' constitutional rights." *Bowling v. United States*, 2009 WL 723226 *9 (D. Kan. 2009).

and John Herrera ("Herrera") and alleges excessive use of force.  All of these claims pertain to the

July 21, 2006, incident.

        a.    *Unlawful arrest.*

It is undisputed that Romero arrested Angelo without a warrant.

> A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. When a warrantless arrest is the subject of a §1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.  We determine probable cause from the totality of the circumstances taking into account both inculpatory as well as exculpatory evidence.

*Buck v. City of Albuquerque*, 549 F.3d 1269, 1287 (10th Cir. 2008) (citations omitted).

Angelo admitted he was underage and had been drinking. Thus, Romero had probable cause

to arrest Romero.[9]  Furthermore, Angelo's assertions do not demonstrate a lack of probable cause.

Angelo merely argues that the facts are analogous to two cases, *United States v. Lefkowitz*, 285 U.S.

452 (1932) and *Taglavore v. United States*, 291 F.2d 262, 265, (9th Cir. 1961).  *Lefkovitz* deals with

unreasonable searches and holds that an "[a]rrest may not be used as pretext to search for evidence."

*Lefkovitz*, 285 U.S. at 467.[10]  *Taglavore* addresses the issue that an arrest cannot be justified by what

a subsequent search discloses.  *Taglavore*, 291 F.2d at 267.  Plaintiffs have not asserted a search

issue as to this incident.  Angelo has failed to establish a constitutional violation or violation of

clearly established law.  The Court will grant summary judgment as to Count VII.

---

[9]"If probable cause exists as to one charged crime, whether the police had probable cause to arrest for other crimes is irrelevant."  *Marrs v. Boles*, 51 F. Supp. 2d 1127 (D. Kan. 1998), aff'd 176 F.3d 488 (10th Cir. 1999).  Even if there was no probable cause to make a warrantless arrest, Romero would be entitled to immunity if his belief that he had probable cause was reasonable.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

[10]Plaintiffs failed to tell the Court that this holding was abrogated in *Harris v. U.S.*, 311 U.S. 145 (1947).

       b.     *Excessive force.*

Count VIII alleges excessive force against Romero. The Court analyzes whether the force used to effectuate an arrest violates an individual's Fourth Amendment right "under the objective reasonableness standard of the Fourth Amendment." *Buck*, 549 F.3d at 1287.  The Tenth Circuit law holds that the reasonableness standard with respect to excessive force claims is clearly established for the purposes of a §1983 actions.  *Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir. 1991).  "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances."  *Buck*, 549 F.3d at 1287.  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008).

When Romero arrested Angelo he grabbed Angelo's wrists and placed him against the wall of the garage.  Angelo specifically testified  "...that's when he grabbed me, told me, 'you're under arrest.' Grabbed my wrists, threw me up against the wall and told me I was under arrest."  Motion, Doc. 49, Exh. B. at 24.  Plaintiffs state that "Officer Romero grabbed Angelo's wrist, threw him against a wall using his forearm with force, and handcuffed and arrested him."  Response, Doc. 52 at 4.  Angelo has not alleged nor is there any evidence to support that he suffered an injury during this arrest.

The Court finds that the force was reasonable and did not violate Angelo's constitutional rights.  As noted, there is no evidence that Angelo was injured as a result of the handcuffing.  *Fisher v. City of Las Cruces*, 584 F.3d 888 (10th Cir. 2009) ("Because handcuffing itself is not necessarily an excessive use of force in connection with an arrest, a plaintiff must show actual injury in order

to prove that the officer used excessive force in the course of applying handcuffs."); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (But in nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate).   As to the pushing, Angelo has not shown he incurred an actual injury.  *Saucier v. Katz*, 533 U.S. at 208-09 (2001); *Cortez,*  478 F.3d at 1114 (an excessive force claim requires some actual injury, be it physical or emotion, that is not de minimus).  The Court will grant summary judgment as to Count VIII.

Count IX alleges excessive force against Herrera.  There is no evidence that Herrera  used any force in obtaining a Breathalyzer sample from Angelo.  *Martin v. Board of County Com'rs.*, 909 F.2d 402, 406-07 (10th Cir. 1990) (physical force or threatened physical force  is required for an excessive force claim).  There is no evidence of actual injury as a result of Angelo taking the Breathalyzer test.  Plaintiffs did not cite to any law which states that deceit may serve as a basis for an excessive use of force claim.  Angelo has failed to establish that the use of deceit is a  violation of a constitutional right to be free from excessive force or that it violates clearly established law. The Court will grant summary judgment as to Count IX.

      c.     *Malicious abuse of process.*

Count X also involves the incident of July 21, 2006.  Angelo and Angela allege claims of malicious abuse of process.   It is unclear from the record what specific charges Romero brought against Angelo.  Plaintiffs assert in their response that Angelo and Angela were charged with

interfering with a police officer.[11]     Angela and Angelo also allege that Romero's actions were

"harmful and offensive."  Doc. 1 at 111.  In their Response, Plaintiffs assert the following:

> On July 21, 2006, Officer Romero appeared at the Montoya residence again, this time
> focusing his malice on Angelo.  Whether or not there  actually was a party with teenage
> drinking as alleged, it is clear that the focus was on Angelo.  Officer Romero arrested
> Angelo ostensibly for objecting to entry by the police and blocking the officer's way to
> the back yard of the Montoya residence where the party-goers had allegedly fled.
> If this arrest was justified, and it was not, the charges against Mrs. Montoya for
> protesting the police activity on her property and against her child were clearly
> oppressive and malicious.  The fact that it took a few days for Officer Romero to
> summon the courage to file charges upon such a flimsy pretext is evidence that he knew
> he was doing wrong.

Response, Doc. 52 at 12.  Plaintiffs do not specify a violation of a constitutional right or a violation

of a law clearly established.  Plaintiffs' assertion that "[t]he fact that it took a few days for Officer

Romero to summon the courage to file charges upon such a flimsy pretext is evidence that he knew

he was doing wrong," is conclusory, speculative and without any basis in fact.

Furthermore, there is no evidence to support that the "original action terminated in favor of

the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or

prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Miller*

*v. Spiers*, 2009 WL 2219256 at *4.  The Court is aware that the common law tort is just a "'starting

point' for determining the contours of claims of constitutional violations under [Section] 1983" and

satisfaction of each of the common law elements is not required for consideration of the federal

constitutional question.  *Pierce v. Gilchrist*, 359 F.3d at 1286..  What is required is that Plaintiff

---

[11]It is undisputed that Angelo was a minor and had been drinking.  Romero had probable cause to charge
Angelo with underage drinking. "C. It is a violation of the Liquor Control Act [] for a minor to buy, attempt to buy,
receive, possess or permit himself to be served with alcoholic beverages."  NMSA 1978, 60-7B-1 (Amended 2004).
There is no evidence before the Court that Angela was charged with a crime as a result of the July 21, 2006,
incident.  Even if she was she could not prevail as she was not arrested.  *Becker*, 494 F.3d at 914, 918-19, 920-21,
and 922-23.

allege a constitutional violation. *Id.* at 1289.  The allegations before the Court in Count X do not support a constitutional violation.

Finally, Plaintiffs have not borne their burden of demonstrating that the law is clearly established.  Plaintiffs have not cited to any law and this Court has not been able to find any law that would support a finding that the facts before the Court support a constitutional claim for abuse of process as a result of Angelo's arrest or any charges filed against Angelo or Angela.  The Court will grant summary judgment as to Count X.

   4. *October 1, 2006, incident.*

Count XII involves the incident of October 1, 2006.  Angela alleges a malicious abuse of process claim against Romero as a result of this incident.  On October 1, 2006, a patron of the VFW died as a result of a head injury after drinking at the VFW.  As a result of this investigation, Romero charged Angela with interference with an officer for allegedly advising VFW employees to not cooperate with police.  Angela's testimony is as follows:

> Q. All right.  Let's talk about the third incident, you described as another VFW incident.  Tell me about that:
>
> A. Well, there was a – actually, there was a death that happened from a man that was drinking in there about a block away from the VFW.  Archie Romero went to go question my bartender about what happened the night before.  He said that I had told her not to give him any information and that was untrue.  So he cited me again for interference with an officer.  Went to court with witnesses and I was found not guilty.

Motion, Doc. 49, Exh. A at 92-93.

....

> Q. The second paragraph [of a supplemental report] indicates that Heather Aguello told Officer Romero that "Angela Montoya said for us not to write statements because she wants to see what we write and they want a copy for our records."  Did you ever direct Ms. Arguello not to write statements until you have reviewed them?

> A.  No.
> Q.  Do you know whether she told that to Officer Romero or not?
> A.  I don't know if she did or not.

*Id*. at 142.

For the reasons previously discussed, Angela cannot prevail.  Angela has not demonstrated a violation of her constitutional rights or that the violation of any right was clearly established law. There is no evidence of an arrest.   There is no evidence of an  "intentional acquisition of physical control."  *Becker*, 494 F.3d at 914.   Thus, under Tenth Circuit law there is no violation of a constitutional right.  *Id*. at 914, 918-19, 920-21, and 922-23.

> 5.   *October 12, 2006, incident*.

In Count XIII Angela alleges a malicious abuse of process claim against Defendant Colleen Johnston ("Johnston") as a result of this incident.

> Q.  Tell me about the incident.
> A.  Well, I was working the VFW.  I was a bartender that night.  There was a man that went in there and he was drinking.  He wasn't visibly intoxicated to me when he left.  Apparently, he went to this truck at the Love's and he fell down at Love's.  I guess Colleen was the officer on duty that night.  I guess she gave him a sobriety test or check his alcohol level – I'm not quite sure about it all, but she went the following day and charged me with selling to an intoxicated person.

Motion, Doc. 49, Exh. A at 107.

....

> Q.  What information do you have that Officer Johnston wanted to get you on one thing or another?
> A.  That's just my opinion.
> Q.  You don't have any information other than your opinion?
> A.  Yes.
> Q.  Do you know who Officer Johnson spoke to during her investigation of this incident?
> A.  As far as witnesses?
> Q.  Correct.
> A.  She talked to Norbert Marquez and myself.

> Q.   Do you know what other steps she took to investigate the incident?
> A.   No.

*Id*. at 108.

....

> Q.   Did Officer Johnston take any other steps against you, other than this on incident?
> A.   No.
> Q.   Do you have any information about the facts upon which Officer Johnston relied in making her decision to charge you with selling to an intoxicated person?
> A.   No.

*Id.* at 109.

The statute governing this charge states:

> It is a violation of the Liquor Control Act [] for a person to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person if the person selling, serving, procuring or aiding in procurement, knows or has reason to know that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated.

NMSA 1978, § 60-71-16.

Considering the undisputed facts before the court, the Court finds that Angela has not shown that Johnston did not have a reasonable belief that there was probable cause to arrest Angela for selling liquor to an intoxicated person.  *Fogarty*, 523 F.3d at 1156.

Even if Johnston did not have a reasonable belief that there was probable cause,  Plaintiffs have failed to carry their burden that this charge violates Plaintiffs' constitutional rights.  As previously discussed, there was no arrest or "intentional acquisition of physical control" and thus no violation of Plaintiffs' constitutional rights. *Becker*, 494 F.3d at 914, 918-19, 920-21, and 922-23. The Court will grant summary judgment as to Count XIII.

6.      *Claim against Scott Julian.*

In Count XIV, Plaintiffs allege a claim of supervisory liability against Julian for failure to train and supervise.   A civil rights action against a public official may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. *Ashcroft v. Iqbal,* ____U.S.____, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that a Government official defendant, through the official's own individual actions, has violated the Constitution."). In addition, a "theory of negligent supervision cannot provide a basis for liability under §1983." *Spencer v. Landrith,* 2009 WL 468291 at *2 (10th Cir. 2009) (citation omitted). Likewise, "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted). Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitution rights." *Id.* at 994-995 (citations omitted).

Plaintiffs cite to *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) for proposition that Plaintiffs must show that Julian was "deliberately indifferent."  This is correct.  In support of this claim Plaintiffs rely on the fact that Angela testified she complained to Julian regarding the harassment and that Julian never put a stop to it. Angela's claim fails because she has not established that Julian's subordinates, Romero, Herrera, Johnston and Scott, violated her constitutional rights. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)  ("In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.").  The Court will grant summary judgment as to Count XIV.

7.    *Municipal liability*.

In Counts XV and XVI Plaintiffs assert a claim for municipal liability against the Town of Clayton.  "[W]ithout the predicate constitutional harm inflicted by an officer, no municipal liability exists." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008). Because no constitutional violation occurred with respect to any of the incidents referenced by Plaintiffs, the Court will grant summary judgment to the Town of Clayton on Counts XV and XVI.

8.    *Official capacity claims against the individuals*.

Similarly the Court will dismiss the claims against Romero, Johnston, Herrera and Julian in their official capacities in Counts VII, VIII, IX, X, XI, XII, XIII, and XIV.  To recover against the individual Defendants in their official capacities, Plaintiffs must demonstrate there was a constitutional violation and a "city policy was the moving force behind the violation." *Kelly v. City of Albuquerque*, 375, F. Supp. 2d 1183, 1205 (D.N.M. 2004).  As discussed above, Plaintiffs have not demonstrated a constitutional violation by the individual Defendants, let alone that any alleged violation was as a result of a city policy.

To conclude, Plaintiffs have failed to carry their burden on all their claims and Defendants are entitled to qualified immunity and summary judgment.  *Albright*, 51 F.3d at 1535 (when a plaintiff fails to carry her burden to demonstrate a constitutional violation or clearly established law, Defendants are entitled to summary judgment and qualified immunity on the constitutional claims).

Finally, the Court will grant summary judgment as to Count XVII, the claim for punitive damages.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Memorandum in Support Thereof [Doc. 49] is granted and Plaintiffs' Complaint for Civil Rights Violations filed July 1, 2008, is dismissed with prejudice.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**